## Marhoefer, et al. *v.* Human Relations Commission.

Argued October 22, 1971, before Judges KRAMER, MANDERINO and MENCER, sitting as a panel of three.

*Gerald Lesher,* with him *Baskin, Boreman, Wilner, Sachs, Gondelman & Craig,* for appellants.

*Stanton W. Kratzok,* Assistant Attorney General, for appellee.

Opinion by Judge Manderino, December 31, 1971:

This is an appeal from a decision of the Pennsylvania Human Relations Commission which found that the appellants, G. L. Marhoefer d/b/a Marhoefer Realty and David Stoehr, had committed an unlawful discriminatory practice in violation of the Pennsylvania Human Relations Act.

On August 14, 1968, a white tester, Jean Kloseck, went to the Baldwin Court Apartments and inquired about renting an apartment. She spoke with an unidentified woman. Later that same day, Elizabeth Harris, a Negro, went to the Baldwin Court Apartments and inquired about renting an apartment. She spoke with David Stoehr.

The alleged unlawful discriminatory practice occurred when Elizabeth Harris spoke with David Stoehr.

The question for determination in this case is whether or not Elizabeth Harris has been discriminated against by G. L. Marhoefer d/b/a Marhoefer Realty and David Stoehr because of her race. While the Human Relations Commission found that such discrimination had taken place, we do not agree.

The Pennsylvania Human Relations Act (Act of October 27, 1955, P. L. 744, as amended, 43 P.S. 951 et seq.) lists certain unlawful discriminatory practices. Section 5 of that Act (43 P.S. 955(h)(1)) provides that it shall be unlawful discriminatory practice for any person to: "Refuse to sell, lease, finance or otherwise to deny or withhold commercial housing from any person because of the race, color . . . or any prospective owner, occupant or user of such commercial housing. . . ." This section was the basis for the Human Relations Commission determination that Elizabeth Harris had

been discriminated against by Marhoefer Realty and David Stoehr. However, the evidence in this case simply will not support the determination that an unlawful discriminatory practice in violation of the Pennsylvania Human Relations Act occurred. The Commission, in its determination that a violation occurred, made several findings of fact. The two key findings, labeled Finding Numbers 6 and 7 are as follows:

"6. On August 14, 1968, at about 12:30 P.M., Mrs. Jean Kloseck, Caucasian, a tester for South Hills Association for Racial Equality, at Respondent Marhoefer's rental office at Baldwin Court Apartments requested and was given an application for a 2-bedroom apartment.

"7. Subsequently on that same day and at the same place, at about 2:30 P.M., Complainant, seeking the same type of accommodation as the aforesaid Mrs. Kloseck, was permitted to fill out an application but Respondent Stoehr failed and refused to tell her of the apartment about which the aforesaid Caucasian tester had been told and been permitted to apply for."

The last part of Finding Number 7 is not supported by the evidence. The last part of that Finding states that David Stoehr failed and refused to tell Elizabeth Harris about an apartment and that Jean Kloseck had been told about the apartment and also that Jean Kloseck was permitted to apply for the rental of the apartment. The Finding is at best sketchy. It doesn't say what Jean Kloseck was told about an apartment and what it was that Elizabeth Harris was not told. If this Finding was meant to mean that Jean Kloseck was told that an apartment was available for her to rent and that she submitted an application for an available apartment it is not substantiated by anything in the record.

Jean Kloseck did not testify that the unidentified female employee told her that an apartment was avail-

able. There is nothing in the record from which any such conclusion can be drawn. In fact, the only inference that can be drawn from Jean Kloseck's testimony is that there were no apartments for rent. Jean Kloseck testified only that she was told there was an apartment with a "hold" on it.

Several hours later, Elizabeth Harris went to the same office and talked with a different person, David Stoehr. She was told there was nothing available. She filled out an application as did Jean Kloseck, which was duly filed by David Stoehr.

Two different employees were involved in these two visits by two different women at different times. The same employee did not speak to Jean Kloseck and Elizabeth Harris. There is no evidence in the record that any apartment was available on the date in question. Both women filled out applications. Both women were given pamphlets that showed the various kinds of apartments in Baldwin Courts and the layouts of these apartments. These facts do not support Finding Number 7 and a conclusion that an unlawful discriminatory practice occurred.

The Commission contends, however, that there was evidence that David Stoehr both on the day following Elizabeth Harris' visit and on days previous to her visit told other people that there was a tenant who had an apartment to sublet. They say that from this it can be inferred that David Stoehr when he talked to Elizabeth Harris knew that a tenant had an apartment to sublet and did not mention it to Elizabeth Harris. David Stoehr denied that he had knowledge of any tenant with an apartment to sublet prior to Elizabeth Harris's visit and the commission's evidence on this point was limited to alleged highly inconclusive admissions by David Stoehr. There was no other evidence on this point. But even granting that David

Stoehr knew of a tenant who had an apartment to sublet prior to the day of Elizabeth Harris' visit does not establish that at the time of Elizabeth Harris' visit he consciously withheld information about such an apartment. We must point out that by the Commission's own evidence on the day in question, Jean Kloseck, the Caucasian applicant, *also was not told about any tenant who had an apartment to sublet.* Thus, on the day in question, August 14, 1968, the testimony clearly shows that neither Jean Kloseck nor Elizabeth Harris was told anything about any tenant who had an apartment to sublet. In fact, Jean Kloseck's testimony that she was only told about an apartment with a hold on it contradicts any inference that on August 14, anybody was under the impression or telling applicants that there was a tenant with an apartment for sublet.

Findings and conclusions must be backed by substantial evidence. No ultimate conclusions can stand unless they are supported by basic findings which find support in the evidence. *See Klingensmith v. Department of Labor and Industry,* 1 Pa. Commonwealth Ct. 204, 273 A. 2d 920 (1970). The evidence in this case will support neither the basic findings of a discriminatory practice nor the ultimate conclusion of a violation of the Human Relations Act.

Having decided that no violation of the Human Relations Act occurred in this case, we find it unnecessary to address ourselves to several allegations made by the appellants referring to constitutional infirmities during the proceedings before the Commission.

The order of the Human Relations Commission is reversed.